UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID BERGUIRISTAIN,

                    Plaintiff,

v.                                                    Case No.  5:05-cv-277-Oc-10GRJ

COTTON STATES MUTUAL INSURANCE
COMPANY,

                    Defendant.
_____

## ORDER

Pending before the Court is Defendant's Motion For Partial Summary Judgment.

(Doc. 21.)  Plaintiff filed a response in opposition (Doc. 24) and, therefore, Defendant's

motion is ripe for review.  For the reasons discussed below, Defendant's motion is due

to be **DENIED**.

## I. FACTS AND BACKGROUND

This lawsuit arises out of sinkhole damage to Plaintiff's home in Inverness,

Florida.  At all times relevant to this action, Plaintiff's home was insured by Defendant,

Cotton States Insurance Company under a homeowners insurance policy.[1]  In July 2003,

Plaintiff's policy was renewed with a liability limit of $92,200 for his dwelling.[2]  On

September 17, 2003, at Plaintiff's request, Plaintiff's liability limits were increased to

$193,000 for his dwelling.[3]

_____

[1] A copy of the Policy is attached as Exhibit A to the Complaint (Doc. 2).

[2] See Doc. 22, Exhibit 1 (Affidavit of Roy Walter Brice), ¶7 and Exhibit A.  This refers to Coverage A.

[3] See id., ¶¶8-9.

In early 2004, at the recommendation of his friend, Paul Smith, Plaintiff contacted Lenny Bauman, a public insurance adjuster regarding cracks to the interior and exterior of his house.[4]  In February 2004, Mr. Bauman filed a claim for sinkhole loss on behalf of Plaintiff, citing a February 18, 2004 date of loss.[5]  In August 2004, Plaintiff filed a proof of loss seeking payment of $212,300.00.[6]  On November 15, 2004, Defendant took Plaintiff's Examination Under Oath ("EUO").[7]  On May 3, 2005, Defendant paid Plaintiff $49,056.34 for the cosmetic damage to his home and the necessary subsurface work to stabilize the sinkhole loss. [8]

Plaintiff subsequently filed this action in the Circuit Court in and for Citrus County, Florida.  Defendant, Cotton States Mutual Insurance Company, removed to this Court on the basis of diversity jurisdiction (Docs. 1 & 2).  In his Complaint, Plaintiff alleges that Defendant breached its contract with Plaintiff by failing to pay benefits to which Plaintiff is purportedly entitled under his homeowners insurance policy. (Doc. 2, ¶¶ 8-13).

---

[4] See Doc.22, Exhibit 3, pages 93-94, 100-01, 107.

[5] See Doc. 22, Exhibit 2 (Affidavit of William L. Wallis), ¶5 & Exhibits A&B.

[6] See Doc. 3, ¶33.

[7] See id., ¶6.  Defendant filed excerpts, rather than the complete transcript of Plaintiff's EUO. While it is unclear whether the subject insurance policy expressly required Plaintiff to submit to an EUO, it is typically a condition precedent to coverage.  See e.g., Goldman v. State Farm Fire General Insur. Co., 660 So.2d 300 (Fla. App. Ct. 1995); Pervis v. State Farm Fire and Casualty Company, 901 F.2d 944 (11th Cir. 1990).

[8] A copy of the letter explaining Defendant's decision as to Plaintiff's claim and forwarding the $49,056.34 payment is attached as Exhibit A to Defendant's Answer, Affirmative Defenses and Counter-Claim (Doc. 3).

Defendant filed an Answer raising five affirmative defenses and asserting a Counter-Claim against Plaintiff for declaratory relief. (Doc. 3).

The basic theory underlying Defendant's Counter-Claim is that Plaintiff knew about the sinkhole damage during the summer of 2003, but intentionally concealed or misrepresented this information so that he could increase his coverage limits and then make a claim for the sinkhole damage after the limits were substantially increased. In its Counter-Claim, Defendant seeks a declaration from the Court that: (1) Defendant has no liability under the policy; (2) that the limits of liability for the policy which apply to Plaintiff's sinkhole loss are the limits of liability which were in effect on or before July 2003; (3) that the policy is void because Plaintiff violated the policy's concealment or fraud clause; and (4) that Plaintiff was not entitled to, and therefore must return the $49,056.34 payment, less any amount of premium which must be reimbursed to Plaintiff because the policy was voided.

Now, Defendant has moved for summary judgment on the limited issue of which limits of liability apply to Plaintiff's sinkhole loss.  According to Defendant, the undisputed facts show that the sinkhole loss occurred during the summer of 2003, and thus, the applicable limit of liability was the limit in effect during the summer of 2003 (i.e., $92,000).[9]

---

[9] Defendant argues that there are two approaches for determining when a loss occurred and triggered coverage -- i.e., (1) the "manifestation" or "time of discovery" trigger, which is when the insured learned of the loss; or (2) the "injury-in-fact" trigger, which is when the loss actually occurred, even if it was not discovered by the insured until some time later. See Doc. 21, pages 6-9. According to Defendant, both approaches lead to the same result -- that the sinkhole loss occurred during the summer of 2003.

(continued...)

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[10]  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.   If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[11]  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## III.  DISCUSSION

To support its position that the sinkhole loss occurred before September 17, 2003, Defendant relies heavily on Plaintiff's EUO testimony.[12]  According to Defendant,

---

[9](...continued)
See id. at 8. Accordingly, the Court need not determine which approach should be applied.

[10] See Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[11] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[12] Plaintiff argues that his EUO testimony should be treated as an affidavit as opposed to a deposition. See Doc. 24, pages 5-7.  However, it was not necessary for the Court to address this argument because regardless of the weight accorded Plaintiff's EUO testimony there are material issues of fact that cannot be properly resolved on a motion for summary judgment.

"while the exact date that [Plaintiff] discovered the loss is uncertain, the key event was a visit by his friend Paul Smith during the summer of 2003" in which Plaintiff showed Mr. Smith cracks throughout his house.[13]  Plaintiff testified that he thought Mr. Smith visited during the summer of 2003 "because we were going out in the boat that day.  It was a warm day."[14] However, even if Mr. Smith visited Plaintiff during the summer of 2003, his visit could have occurred after the liability limit was increased on September 17, 2003 because summer did not end until September 23, 2003.[15]   Moreover, Mr. Smith attests that in November or December 2003, he had a telephone conversation with Plaintiff regarding the cracking in his house and that he did not personally witness any damage to Plaintiff's house until approximately August 28, 2005.[16] Accordingly, there are material issues of fact as to when Mr. Smith visited Plaintiff's home.

Defendant also points to Plaintiff's testimony that he showed his neighbor, Vincent Positano some exterior cracks approximately one to three months before Mr. Smith's visit.[17]  As noted above, the record is unclear as to when Mr. Smith visited.

---

[13] Doc. 21, page 2; Doc. 22, Exhibit 3, pages 100-05.

[14] Doc. 22, Exhibit 3, page 101.

[15] See http://aa.usno.navy.mil/data/docs/EarthSeasons.html ; http://en.wikipedia.org/wiki/Equinox. In 2003, the autumnal equinox (which signals the beginning of autumn and the end of summer) occurred at 10:47 a.m. on September 23rd.

[16] See Doc. 29, Exhibit  A (Affidavit of Paul Smith), ¶¶3-4.  This affidavit is the subject of Plaintiff's Motion To Supplement Affidavit In Support Of His Response To Defendant's Motion For Partial Summary Judgment (Doc. 29.)  In this motion, Plaintiff requests that the Court consider Mr. Smith's affidavit even though it was filed after Plaintiff's deadline to respond to Defendant's Motion for Partial Summary Judgment.  While Plaintiff's counsel represents that Defendant opposes this motion, Defendant has not filed a written opposition and its time for doing so has passed.  Accordingly, and upon due consideration, Plaintiff's Motion To Supplement Affidavit In Support Of His Response To Defendant's Motion For Partial Summary Judgment (Doc. 29) is due to be **GRANTED**.

[17] See Doc. 22, Exhibit 3, page 114.

Moreover, Defendant fails to note that Plaintiff further testified that his conversation with Mr. Positano "might have been [in] December.  It might have been [in] January, right around the same time I was calling Lenny or Paul.  I'm not for certain, but it was within, you know, that time frame."[18] Construing this testimony in the light most favorable to Plaintiff, Plaintiff thought his conversations with Paul Smith and Vincent Positano occurred in December 2003 or January 2004 -- several months after his coverage limits had been increased.

Finally, Plaintiff testified that he observed new cracks to his house "probably about six months" before he filed his insurance claim in February 2004.[19]  This "approximation" is woefully insufficient to establish, as a matter of law, that Plaintiff knew about the cracks prior to September 17, 2003.  Moreover, Plaintiff has offered his own affidavit in which he attests that "[a]t no time did I notice damage to my home, which caused me to file a sinkhole claim with my insurance company, prior to September 17, 2003."[20]

Based on the foregoing, the Court cannot say as a matter of law that the sinkhole loss occurred prior to September 17, 2003.  As such, Defendant's motion for partial summary judgment is **DENIED**.[21]  Based on the Court's review of the docket, it appears

---

[18] Id., page 116.

[19] See Doc. 22, Exhibit 3, page 80.

[20] See Doc. 25, Exhibit B (Affidavit of David Beguiristain), ¶¶4-5.

[21] Because the Court found it unnecessary to obtain additional information in order to resolve Plaintiffs' motion, and in keeping with the Local Rules of this Court that do not permit reply briefs, Defendant Cotton States' Motion For Leave To File Reply Brief In Support Of Its Motion For Partial Summary Judgment (Doc. 26) is due to be **DENIED**.

as though Plaintiff has failed to file an answer to Defendant's Counter-Claim.

Accordingly, Plaintiff shall file and serve an answer to Defendant's Counter-Claim (Doc. 3) within **ten (10) days** of this Order.

      **IT IS SO ORDERED.**

      **DONE AND ORDERED** in Ocala, Florida, on January 19, 2006.

                    GARY R. JONES
                    United States Magistrate Judge

Copies to:
    All Counsel